Well, good morning and welcome to the Ninth Circuit. I'm Judge Nelson, and it's a pleasure to be joined with Judge Hawkins and Judge Clifton, and we want to welcome all the counsel this morning. We have two arguments set for argument this morning, and we're excited to welcome the law students. We always enjoy hearing from the law students. The expectations are very, very high. Does that help you or make you a little nervous? And thank you for getting them ready, and just pay attention to the time. I guess you're going to split it, so one will do the opening, and then one will do the rebuttal, and just sum up as your time's expiring, and we'll go ahead and proceed then with the first case set for argument, which is Pena-Lopez v. Blanche, case number 25-2692. Thank you, Your Honors, and may it please the Court. I'm Thomas Birch from the University of Georgia, and I wanted to briefly introduce my students who will be handling the argument today. Julia Gillies will handle the opening arguments, and Kaitlin Halsey will do the rebuttal, and I'll be sitting at counsel table. Thank you, Your Honors. Good morning, Your Honors, and may it please the Court. My name is Julia Gillies, and I, along with my co-counsel, Kaitlin Halsey, represent the petitioner, Mr. Ulysses Pena-Lopez Pena-Lopez. We would like to reserve four minutes for rebuttal. Ulysses was beaten and arrested by ICE based on a prior removal order. He was denied access to his retained counsel prior to and during the reinstatement proceedings, and he was found to have no reasonable fear of persecution or torture if removed to Mexico. He did have a lawyer at the reasonable fear hearing, didn't he? Yes, Your Honor, but not at the reinstatement proceedings or prior to that point. And what in what way was he prejudiced by that? As I understand it, your main argument on that is, well, he could have contested his identity and then you didn't have a fingerprint, and so that would have helped him. But even when he had a lawyer, he never contested his identity. Is that correct? In the reasonable fear proceedings, that's correct, Your Honor, but the point of the reasonable fear proceedings differed from those of the reinstatement proceedings. And at the time of the reinstatement proceedings, he had just been arrested three days prior. He was beaten to the point that he suffered a heart attack and a stroke. And then three days later, he was subject to those reinstatement proceedings where he explained that he would participate if he could speak to his retained counsel. DHS was already aware of Ms. Hodge's G28, detailing that representation. But instead of allowing him to speak with his counsel, they moved forward with the reinstatement proceedings and he was not able to make a statement on his behalf to contest that identity. When he did have an opportunity, he did not say subsequently, that's not me. In fact, he never said, that's not me. You don't appear to be saying that's not him. So I hear the grievance, but I'm not sure what it leads to, what impact it has on what we're doing here today. It's correct. He didn't say that's not me, Your Honor, but he simply stayed silent. He asked to speak to his attorney and- Same question. What difference does it make today? If it was him, okay. Well, the issue here is that he didn't have the opportunity to contest and there is- And what difference does that make today? I mean, can you connect it up with anything? The due process clause, Your Honor. So this is your due process argument? Yes. But what prejudice resulted? The prejudice is that if he had been able to speak to his counselor and raise the identity-based challenge, he would have been able to win the identity-based challenge because- I mean, I can't explain why he would have won, why he could prove it's not me. That's never appeared. It doesn't really appear in the arguments you presented in your brief. So I'm still a little mystified as to what difference that's supposed to make as to what's before us today. It's un- Do you contend that it wasn't him, that he's been falsely identified? We contend that he needs the opportunity to be able to make a statement. Different question. Do you contend that he was falsely identified, that he was not actually removed several years ago? We haven't had his testimony on that point, Your Honor. What is in the record is that he wasn't able to make a statement either way. But that doesn't demonstrate prejudice. So where is, is there a case law that says every immigrant must, has a right to raise an argument that may or may not be meritorious, and if they're denied that, that's a violation? What's your best case that says this is a true violation, that warrants, I mean, you're really seeking reversal of the removal order, right? We're seeking a remand of the reinstatement order. To be able to challenge. Yes, Your Honor. That's the whole question. It's sort of like coming in and asking, well, we want to amend the complaint. I mean, it's not uncommon for us to say, well, okay, what allegations would you ask to amend in the complaint? And if we can't get a good answer from counsel, then we usually don't allow that. We don't allow a remand for a feudal act. And that's why Judge Clifton is drilling you on this. And I know you don't want to answer it because it puts you in a very tough spot and you're being a very good lawyer. But, but you, I mean, you understand, like, why would we go through the remand just so he can go in and say, well, I, I am him. I mean. Well, this court has explained that, especially in via Unguiano v. Holder that a petitioner has, needs to have notice and an opportunity to contest the reinstatement. That's the issue that is here is that he did not have any opportunity to meaningfully participate in the reinstatement proceedings. And because of the lack of opportunity. Well, he did, he just didn't have a lawyer. No, your honor. He wasn't in any physical condition. Oh, because, I see, because of the stroke or the heart attack. Both, your honor. Both. So I want to, with the time you have left, I, it's, I mean, it's, it is tragic what, what happened here. I mean, he clearly had a medical event of some sort and maybe multiple as you, as you, how does that get rolled in? And maybe, maybe this is the best hook that you were just getting to. It hurts on the reinstatement, but you're not actually, I mean, you're not actually claiming that the removal is invalid because of the excessive force that he claims, or are you? So the government, when it reinstates the prior removal order needs to show certain things. One of those things is that the person that they have detained, that they are trying to reinstate the removal order against is the same person who is subject to that prior removal order. When did your client first enter the United States? When did Pena, Pena Lopez first enter the United States? Was it 2013? It was 2013, your honor. And this most recent event occurred when? In 2025. Okay. And in between, is it correct that he has several criminal convictions? Yes, your honor. Including contempt of court? Yes, your honor. Cruelty towards a child? I believe that, that charge was dropped, your honor. Aggravated assault? Yes, your honor. That UI? Yes. Were those all state court proceedings? I am not sure, your honor, but I would be happy to consult with my co-counsel to provide that information on rebuttal. So is it fair to assume that his fingerprints would have been in the system? The fingerprints wouldn't have been attached to the prior removal order, which is the problem that is here. The government- Is there any doubt that the individual who had all of these convictions was the same individual that entered in 2013? Well, yes, because- Is there a shred of doubt? Yes, your honor. But either way, the regulations, what it states is that in disputed cases, the government must provide the fingerprints of the underlying removal order and then compare those fingerprints with the person that is being detained. The regulations state that if the order and their- But it had to go through a different process. Yes, your honor. He would simply go through the regular removal proceedings under section 240 of the INA. With the brief amount of time I have left, I would like to go to the withholding of removal and cat claims if your honor doesn't have any more questions on this point. Here, Ulysses is a 31-year-old Mexican citizen who came to the United States after the Jalisco cartel beat him, threatened to kill his family, and after he-  Money was the initial factor. Yes, your honor. They were extorting money from his family. Is there any evidence that that extortion related to his political views? Yes. What's that evidence? When he reported the cartel to the police, the police called the cartel and told them that he was pointing fingers at them. At that point, the cartel escalated their violence against him and his family and killed his uncle and two cousins, similar to Barajas Romero v. Lynch, where the petitioner there had made a remark about not wanting to pay corrupt police officers. This court recognized that that remark could be construed as an anti-corruption political opinion and because he had already been kidnapped and tortured for three days based on a financial extortion motive, but the violence escalated against him after making that remark, the court recognized that there was a mixed motive present. And as long as one of those motives is based on a protected ground, such as that political opinion remark, that's sufficient to meet the 10% standard that is required for the INA. So here's your problem. Pina Lopez also testified that he had never been harmed for his race, religion, nationality, or political opinion. So that, I understand you're saying, hey, look, there's some evidence here that you could extrapolate from, but that also runs up against his own testimony where he's, and then he was asked whether he'd been harmed because of some characteristic that makes you different. And he said, yes, for being an illegal immigrant. So, I mean, I get it. We get unsophisticated petitioners. They're saying these things, but the standard here is substantial evidence. So when we're faced with his testimony that it was never based on political opinion, you grab something out of the record that says, hey, if you extrapolate from this, there's some case law that can support this. How do we get past the substantial evidence standard in the face of potentially conflicting testimony? So to address the first part of the transcript is the transcript is a truncated version of what was actually said. The questions that the asylum officer asked don't actually align with the standard for what constitutes a particular social group. And this court has explained that one not need to know their own group identity to be able to challenge the nexus. Additionally, your honor, the. You can finish. The issue regarding the substance of the testimony is something that this court has recognized that it does not look just to these single statements of what the petitioner recognized himself, but to the substance of the testimony as a whole. And that's provided by this court in Alvarado Herrera v. Garland. We ask this court to remand. Thank you. Thank you very much. We'll hear from the government. May it please the court, Colin Tucker for the acting attorney general. Regarding the reinstatement determination at the heart of this case are straightforward, factual findings by DHS that petitioner has never disputed. Petitioner is an alien. He was previously removed pursuant to an order of removal and subsequent to removal, he illegally reentered the United States. That these facts are undisputed means that there's no basis for disturbing the agency's reinstatement determination. So what about this idea that he didn't have the opportunity? I mean, I haven't seen, maybe my colleagues have. I had not seen this in a prior case where there's apparently an agency regulation that if you're doing it based solely on a reinstatement, they can contest. And if they contest and you don't have a fingerprint, then you have to go through another route. Do you agree with that? You agree that that's an accurate statement? That's what the regulation says, Your Honor. I share your, at least at the beginning of this case, I would have shared your lack of familiarity with that because I've also encountered a case where it's been raised in the manner it is here. Okay. So, I mean, is it true that, I mean, you couldn't, I mean, could you have gone as Judge Hawkins was suggesting? I mean, there's fingerprints probably of him in criminal proceedings or elsewhere, but I guess the regulations would not have allowed you to do that. The regulations would have required you to go back to the... I believe, Your Honor, my colleagues' understanding of the regulation is correct that the fingerprints have to be in connection with the prior order of removal. So your argument is, look, he's never challenged it, so this is not a contested hearing. Our argument is that he has never challenged it and he could not have challenged it because he is the person that the reinstatement order says he is. How do we know that? We know that because he hasn't argued otherwise. He hasn't challenged, I understand that, but if it's not his affirmative burden to demonstrate identity because the regulation appears to put it on the department... I would push back on... Have substantial evidence and there's zero evidence? I would push back on that characterization of it being the government's burden, Your Honor. It's the petitioner's burden to raise a dispute. That's step one of this entire process. And because he never raised any dispute, the government had no It's an interesting question because if there were... Here, it's this factual issue that I think we have to suspend reality a little bit, but say there was some legal trigger and say it said if the reinstatement were more than one year prior, you can't rely upon it. And he didn't have a lawyer. Wouldn't that then be prejudiced? I mean, I guess the difference there is you'd say, well, yeah, but we can look at this and say on the facts, we know that he would have been able to take the benefit of that argument and the lawyer... He didn't have a lawyer, so he couldn't raise it. Is that the difference in our analysis here? Yes, Your Honor. I think the best he could have done in this situation is remain silent with or without a lawyer, which is precisely what he did. It doesn't help him in this sense, though, because he needs to raise a dispute as to identity before the fingerprint comparison comes into play. I also just want to push back a little bit on the suggestion that he was unable to participate on his own behalf during the interview. The government doesn't meaningfully dispute much about the medical evidence, but Petitioner made clear, I think, both in how he went about the interview and the declarations that followed that he didn't participate because he wanted an attorney before he said anything. I don't see anything in there about him having been unable to participate in the interview. Right. You don't dispute that he had a stroke and a heart attack, but you're saying there's no causal connection between those and his ability to participate in the interview? Correct, Your Honor. Okay. So he decides to remain silent, knowing that he has someone who is prepared to appear as his attorney because of that county system. And he's probably watched enough TV shows where they get the impression of don't say anything until I can be there. So he elects to remain silent. And you've argued that it's his burden, but his remaining silent really can't be a surprise if he thought he was going to have a lawyer and was denied that. So I'm not sure I can infer what you're saying we need to infer from his silence. That is, in fact, his silence amounts to a plea of guilty. That's me. Yeah, I'm the guy. Now, it is true that he did not raise it at later opportunities. The suggestion from petitioners counsel is that, well, the reasonable fear interview was about reasonable fear. He wasn't given an opportunity to there at that point to question his identity. Do you share that sense or do you argue that he could and should have contested identity when he had counsel available to him at a subsequent opportunity? I definitely believe that he could have, Your Honor. There was a significant gap in time between when the reinstatement interview occurred and when the reasonable fear interview occurred. I believe it was from February 24th up to mid-April, I believe, is when the reasonable fear interview happened. Certainly, his counsel of record could have attempted to, I don't know, perhaps seek reconsideration of DHS's decision at that point. And again, as was pointed out still even now, we have no claim that he is not the person that DHS says he is. That being the case, it's not clear to me what even would happen on a remand for reconsideration of reinstatement now. I understand why my colleagues didn't want to take it to this extent, but the only way, in my view, that he could contest his identity is by lying about his identity. I'm not sure what there is. Which then provides another basis for removal. Or at the very least would provide a basis for denying him future immigration benefits, certainly. I mean, it's no different than all these cases. Sometimes extra time in the country is the name of the game. I suppose so, Your Honor. But I think we're really that explicit about the... Well, he's detained, isn't he? Actually, I'm glad you bring that up, Your Honor. I believe he's been removed. He's been removed. Oh, he has been removed. I can be corrected on that if it's not the case. In front of us with regard to a stay of removal, I think, although we had so many cases, I might be confused about that. My understanding was that motion had been resolved in the government's favor, Your Honor. Again, if I'm wrong about that, then I'll... We have so many cases. It's hard for me to keep track of that sometimes. So can I ask you about the... What do we do? So first of all, I say you filed two days ago the new warrant of removal. Can I ask you, does this matter? Because as I was looking at it, whether there was a warrant... I mean, the initial warrant, there's some problems with it. It's signed after they... Post dates. Yeah. So I mean, but I don't know if that matters. And I guess I should... I'll ask in rebuttal to hear their response on why that matters. But I mean, my concern is I'm not sure we can look at this. This is not... I understand why you put it forward, but it's not in the administrative record. I think we're limited to the administrative record. Wouldn't you agree with that? Very much so, Your Honor. In retrospect, and by retrospect, I mean the day and a half that has passed since, I think a motion to supplement was an imperfect vehicle for this filing. Perhaps if I'd attached it just to a general letter or a motion for judicial notice. Well, I'm not... Yeah, but that's another question. I'm not sure we can even take judicial notice of it. I mean... When you ask whether it matters, Your Honor, I don't believe that it does. I think the arguments on the warrant, the government's arguments on the warrant point are still good. I filed it because I found out about it. And the last thing I wanted was for someone to ask me today, could there be another warrant? And then I'd have to say, well, it turns out there is. And it looks even worse for the government in that case. I appreciate the candor. Yeah. So, I mean, just to put the pieces together, there was a warrant two years prior. They didn't know about the warrant. So then they arrest him and then they go and try and get another warrant. I don't know whether they knew about the warrant or whether they decided after the fact that the two-year passage of time looked strange enough that they wanted to have something more recent in the record. Okay. Okay. Let me ask you about something else. The immigration judge stated what I take to be something of an adverse credibility determination. He said that exceedingly speculative and lacking credibility was what I put down in my notes. He doesn't explain that in any fashion. It's inconsistent with what was the result of the reinstatement hearing where petition, what we call petitioner, was specifically identified as being credible. What substantial evidence supports the reference by the IJ to him lacking credibility? There is none, Your Honor, which is why the government didn't even go to that point in its brief. I think exceedingly speculative works. Lacking credibility is, again, to be candid, do not know why that clause is in the language the immigration judge used. To what extent can we be sure that that assessment of petitioner's credibility didn't influence the determinations by the IJ with regard to the reasonable fear elements that are before us? In particular, I guess, the possibility of having a meritorious claim under the Convention Against Torture. The IJ said no, but really didn't. I mean, this is a very terse document, and I understand that's the context in which he was expressing his conclusion, not outlining the basis for it in a way that we more customarily see, and I suspect you more customarily deal with, although recently we've all gotten a lot more used to the reasonable fear process. So why shouldn't I be concerned about the failure to explain this credibility assessment and the possibility that it influenced the merits decision? Your Honor, I think as a matter of routine, immigration judges very frequently will make an adverse credibility determination and then separately address the merits in the alternative or vice versa. It's not, in my understanding, a habit of the Court to refuse or, you know, find problematic the merits finding because there's also an adverse credibility determination. Well, but I have seen cases where we discern that the adverse credibility determination is not soundly based, does not have substantial evidence supporting it, as appears to be the case here, simply because he didn't explain where it was coming from. So when you get to the other part, well, if this evidence is rejected and usually in an ordinary determination, he'll explain and will say, because I'll just say alien, because I get back and forth between petitioner and respondent, because he'll say respondent, but because the alien was incredible, he hasn't made the case for asylum, for withholding removal, for cat. There's a gap on cat where in theory you could make a case entirely on country conditions reports and so forth, but that's exceedingly rare. And usually the rejection is articulated as being based at least in part on the lack of credible testimony from or evidence from the alien. There's no such elaboration here. The whole thing's in what, two paragraphs? And so the concern that I have, I mean, it still remains. Can I be sure that when he says, the court concludes, even if the non-citizen were harmed in the future is not established reasonable possibility of harm committed by, with consent of acquiescence of public officials. Well, that, and then it concludes the court also agrees with the reason expressed by the asylum officer who had found the alien credible. So maybe there you can say, well, even if he's credible, I agree with the denial by the asylum officer, but I do have some concern that the terseness of this single paragraph leaves open the possibility that the lack of credibility assessment as assessed by the IJ has an impact on the merits determination. And is there anything else that I can look to, to set that concern aside? Well, you beat me to it there, Your Honor. I think as a last resort, the affirmance of the asylum officer's decision, which A, noted explicitly that it was nexus-based and B, specifically found that there were no credibility concerns as to this petitioner. So if you look at the cat claim in particular, the asylum officer apparently concluded, and the immigration judge didn't disagree that the fact that the, if taken as credible, the testimony of our petitioner did forge a link between the call made at the police station that apparently tipped off the cartel that, that he was there, that just got cast aside. Why was it cast aside? Well, I don't know that it was cast aside, Your Honor. I think that as they're always required to do, the asylum officer and the immigration judge here looked at the evidence in the aggregate and determined that that particular finding of overhearing half a phone call conversation was insufficient to get the petitioner where he needed to go as far as meeting the acquiescence burden is concerned. I can say I've just sort of- I'll take you over a couple of seconds. It's not news to anybody sitting on this court very long. There are plenty of country condition reports and there's some of the record for this case that suggests that corruption of law enforcement officials is far from unknown in large parts of Mexico. And so exactly what is, should give us a basis to believe that he's not going to be at that 10% risk of being killed, which surely amounts to torture when he goes back. Well, there's a few points on that, Your Honor. First, I agree there are the country condition reports you mentioned do say, do speak along those lines to corruption, but there's certainly a distinction between corruption and acquiescence to torture. Second, the burden here on petitioner- Well, if you tip off the cartel, the guy they're out to get is coming back and he gets killed. I mean, that seems to be a pretty direct link. That's true, Your Honor, but the country condition reports speaking to corruption don't speak to, you know, that nature of harm. Secondly, the petitioner was required- is required to produce particularized evidence as to his specific circumstances, which country condition reports don't help with. Okay. For the reasons stated here today and in the government's brief, the petition for review should be denied. Thank you.  Good morning, Your Honors, and may it please the court. My name is Caitlin Holsey, also on behalf of Ulysses Pena Lopez. I would like to first start with the point that Ulysses has proven credible testimony, excuse me, shown credible testimony that there is a nexus between his feared harm and his fear of persec- and his, excuse me, his political opinion and his family-based social group. Judge Clifton, as you said- What's the political opinion? Your Honor, it is where Ulysses reported the cartel to the police, and the police immediately after this reported him back to the cartel, after which the cartel killed his uncle and two cousins. That may well suggest that the police were corrupt. What does it have to do with political opinion? Your Honor, when Ulysses reported the cartel to the police, he was articulating an anti-cartel political opinion, because as this held in Ahmed v. Kaiser, a political opinion need not be a very formal statement or action. It can be simply just a statement, for example, in Barajas Romero v. Lynch to a persecutor themselves. And so here, Ulysses went one step further, reporting not only to the cartel or voicing an opinion not only to the cartel, but addressing the police and reporting the cartel to them. And this is similar to the anti-corruption political opinion this court recognized in Barajas Romero v. Lynch, that it can just be a statement. So similar to the question I asked your co-counsel, at page 554 of the record, there's a question, have you ever been harmed or threatened, or do you fear being harmed because of your political transcript? What is your response to that? Even if we were to accept your view that you could articulate or that could support some sort of political harm, what is your response to his statement in here, and why does that not provide, I mean, you're under substantial evidence. That's the problem you have here. Yes, Your Honor. This statement itself ignores the bulk of his testimony, and therefore it's not a waiver of this nexus argument between his feared harm and his political opinion. Well, I don't think I'm positioning this as a waiver. I'm just saying, look, he was asked the question directly, and he said no. There was another example, which you could extrapolate from. If you could go either way on those, why is it not substantial evidence for the IJ or the BIA to look at this statement and say he was asked whether he was ever, if he fears being harmed from political opinion? Yes, Your Honor. It's unlikely here that he understood the definition of political opinion as this court has described it and its precedent, also because this would assume that he does not, it discounts the bulk of his testimony here. So his answer on the political opinion point, he may not have understood that he could simply provide a statement to the police in this constitute a political opinion. Did he have counsel when he answered that question? At the reasonable fear proceeding, yes, Your Honor. Yes, he did. Can I ask you, to the extent you know, two days ago that government filed a motion with this 2023 warrant, do you intend to respond to it? Do you think you need to? Your Honor, you asked whether or not this matters, and the lack of a warrant would matter in this case, but because we're not really sure where, excuse me, whether or not there was a warrant, we would just say at this point that there's no evidence that for sure there was a warrant. And so that is really all that we can say here. Well, I guess my question is, do you want us to keep the record open for 10 days for you to file a response, or do you intend to file it like a formal opposition or- Your Honor, I don't assume so at this point. No, we've not discussed that. So explain to me more why a warrant doesn't matter, because to me, the question is, is it removable? I mean, you may have, maybe there's some other claim you have, maybe there's a due process claim, maybe there's a 1983 claim, but why does that affect the removal order itself? Well, Your Honor, the warrant, if there was no warrant in this case, that matters just because it points to the government's, the quick pace of the case that was discounting the fact that they must prove that Ulysses is the original citizen in the removal order. So it goes to our identity-based challenge and just the fact that it's possible that the pace was why the government did not meet its burden for proving that Ulysses was the same person in this removal order. So that is why the warrant matters in that case. Okay. Yes, Your Honor. And you were concerned about this being on remand just a futile exercise because he wouldn't be able to ultimately say that I am not the non-citizen in the underlying removal order. But I wanted to clarify because the government said that Ulysses could not challenge his identity in this case, just because he cannot, he wouldn't need to lie on remand is the point here, because all he needs to do at that point is show that the government has not met its burden as it's required in the regulation. Well, I'm not sure, you've done a good job with the regulations, but I'm not sure I agree with that interpretation because it does say that it has to be a contested identity. So I'm not sure how you get to a contested identity other than saying I'm not him. You're referring to the disputed cases. Yes, Your Honor. Well, in this case, to the extent that the court needs a fact to point at to say that the status of this matter is disputed, even though we would argue that there's no affirmative dispute required by the regulation, the notice of intent or decision to reinstate the box is checked by the asylum officer on that form, but the signature line states refuse to sign there. And this is contrary to other cases, such as Villa Aguiano versus Holder, where the court looked at that document, said, oh, there is a signature there, and therefore he's accepting and he's not contesting that. So here, that would be a form of providing some sort of an affirmative dispute. Yes, Your Honor. Okay, thank you. Thank you for your time and your arguments. Thank you to both counsel for very good arguments. And again, thank you for, I know we're going to hear from some other students tomorrow, and we're looking forward to that. I've had the chance to be out and see your immigration clinic. I know you run a good operation, and we always appreciate, and I know your clients appreciate receiving the excellent lawyering that they've received today. So thank you. And you did a good job too.
judges: HAWKINS, CLIFTON, NELSON